IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | ) Misc. No. ~~98~~- 98-97 <br> ) <br> ) (Under Seal) |

**MOTION TO COMPEL NANCY HERNREICH TO TESTIFY**

FILED
MAR - 6 1998
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

The United States of America, by Kenneth W. Starr, Independent Counsel, respectfully moves this Court to compel Nancy Hernreich to testify before the grand jury regarding the matters for which she has previously asserted Executive and attorney-client privilege. In support of this motion, the United States submits the reasons and authorities contained in its Brief in Support of Motion to Compel Nancy Hernreich to Testify.

Respectfully submitted,

KENNETH W. STARR
INDEPENDENT COUNSEL

_____
Robert J. Bittman
Deputy Independent Counsel

Stephen Bates
Joseph M. Ditkoff
Rodger A. Heaton
Darrell M. Joseph
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C. 20004
(202) 514-8688

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE GRAND JURY PROCEEDINGS ) ) ) _____ ) | Misc. No. ~~98~~- 98-97<br>(Under Seal) |

FILED

MAR - 6 1998

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## BRIEF IN SUPPORT OF MOTION TO COMPEL NANCY HERNREICH TO TESTIFY

The United States, by Kenneth W. Starr, Independent Counsel, respectfully submits this Brief in Support of the Motion to Compel Nancy Hernreich to testify before the grand jury. The grand jury here is investigating "to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether Monica Lewinsky or others suborned perjury, obstructed justice, intimidated witnesses or otherwise violated federal law other than a Class B or Class C misdemeanor or infraction in dealing with witnesses, potential witnesses, attorneys, or others concerning the civil case Jones v. Clinton." In furtherance of that mandate, Ms. Hernreich was asked to relay the substance of her conversations with several other people relating to Monica Lewinsky at a time when Ms. Lewinsky was no longer employed by the United States. Ms. Hernreich stated that she was not willing to answer any questions concerning conversations about Monica Lewinsky that occurred among White House staff.[1]

---

[1] Grand Jury Tr., Feb. 25, 1998, p.42, lines 20-25, p.43, lines 1-9, p.44, lines 24-25, p.45, lines 1-16.

2

In refusing to disclose the substance of conversations concerning Monica Lewinsky, Ms. Hernreich invoked Executive privilege and attorney-client privilege. As a matter of law, neither of the asserted privileges applies. Executive privilege is flatly inapplicable to communications about the President's private conduct; and attorney-client privilege is unavailable to a person who is not seeking legal advice. Accordingly, we respectfully submit that the Court should compel Ms. Hernreich to testify.[2]

### I. MS. HERNREICH'S ASSERTION OF EXECUTIVE PRIVILEGE SHOULD BE REJECTED.

The White House asserted Executive privilege where it clearly does not apply. On February 25, 1998, Nancy Hernreich, Deputy Assistant to the President and Director of Oval Office Operations, asserted Executive privilege in refusing to answer several questions before the grand jury that sought the substance of conversations regarding the President's purely private conduct--conduct having no relation to his Article II duties. Specifically, Ms. Hernreich asserted Executive privilege in refusing to reveal the substance of conversations involving Monica Lewinsky. Ms. Hernreich asserted the privilege concerning

---

[2] The present filing is necessarily broad and general because neither Ms. Hernreich nor the White House has yet offered any rationale for invocation of the privileges here. The burden, of course, rests on the party asserting a testimonial privilege. Bartholdi Cable Co. v. FCC, 114 F.3d 274, 280 (D.C. Cir. 1997).

conversations with the President[3] and with lawyers in the White House Counsel's office.[4]

Several independent reasons dictate that this Court should not allow White House witnesses, including Ms. Hernreich, to deprive the grand jury of relevant testimony based on an assertion of Executive privilege. First and foremost, the privilege, by definition, does not apply to this subject matter. The testimony sought would not reveal the kinds of communications that are protected by the privilege--for example, national security or diplomatic secrets--nor would it reveal confidential deliberative communications about official governmental matters. This Court should not allow a witness to assert a _governmental_ privilege to deny the grand jury testimony about _private_ conduct. Second, the privilege does not apply to Ms. Hernreich's conversations at issue because--by her own account--she was not advising President Clinton or others at the White House about official governmental matters when she spoke to them about Monica Lewinsky.[5] Third, the privilege can be invoked only by the

---

[3] Grand Jury Tr., Feb. 25, 1998, p.33, lines 20-22, p.34, lines 1-6, p.35, lines 14-25, p.36, line 17 through p.38, line 13, p.42, line 20 through p.43, line 9, p.45, lines 17-21, p.52, lines 1-15.

[4] Grand Jury Tr., Feb. 25, 1998, p.44, line 24 through p.45, line 16, p.52, line 16 through p.54, line 24, p.60, line 2 through p.62, line 8.

[5] Grand Jury Tr., Feb. 25, 1998, p.65, line 4 through p.66, line 20.

President and his immediate advisers, a category that does not include Ms. Hernreich. She testified that her role in the White House is to act as "gatekeeper" and administrator of the President's staff.[6] Finally, even assuming Executive privilege applies, it is a qualified privilege which the United States can readily overcome.

Executive privilege may in some circumstances provide varying protection for Executive branch communications, including those reflecting state secrets, Presidential communications, and the deliberative processes of Executive branch officials. See M. Larkin, Federal Testimonial Privileges § 5.01, at 5-2 (1996). The Presidential communications prong of the Executive privilege is implicit in Article II of the Constitution, and the deliberative process prong has its roots in the common law.[7]

However, privileges are an "exception[] to the demand for every man's evidence" and they should be neither "lightly created

---

[6] Grand Jury Tr., Feb. 25, 1998, p.5, lines 11-13, p.7, lines 11-12.

[7] United States v. Nixon holds that the Executive privilege for Presidential communications is qualified, not absolute, and turns on the nature of the documents and the nature of the proceeding. For documents reflecting state secrets, the privilege is virtually absolute in all proceedings--whether congressional, civil, or criminal. For non-state-secret documents, the result turns on the nature of the proceeding. That is, there must be a balancing of needs. 418 U.S. 683, 703-13 (1974). Executive privilege, however "cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." Id. at 713.

nor expansively construed, for they are in derogation of the search for truth." Nixon, 418 U.S. at 710.

The grand jury has an important function assigned by the Constitution. The grand jury's role is to indict persons who there is probable cause to believe committed crimes, and to protect persons from unwarranted prosecution where probable cause does not exist. United States v. Calandra, 414 U.S. 338, 343 (1974). To accomplish that function, the grand jury must have access to all relevant evidence: "[T]he longstanding principle that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (citations omitted). The grand jury is an arm of the court and its inquiries are judicial proceedings. Levine v. United States, 362 U.S. 610, 617 (1960). The grand jury's "investigative powers are necessarily broad. 'It is a grand inquest . . . the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation.'" Branzburg, 408 U.S. at 688 (quoting Blair v. United States, 250 U.S. 273, 282 (1919)). A grand jury investigation is "not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." Id. at 701 (citation

omitted). For that reason, the Supreme Court has said, the grand jury is entitled to a considerably broader range of evidence than either the government or a criminal defendant would be entitled to introduce at trial. United States v. R. Enters., Inc., 498 U.S. 292, 298 (1991). "Nowhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." In re Sealed Case, 676 F.2d 793, 806 (D.C. Cir. 1982) (footnote omitted).

The limited case law on the subject of Executive privilege makes one principle crystal clear: the privilege, whether applied to a conversation with the President or to fact gathering in preparation for such a conversation, is intended to promote candid communications by and with a President concerning the execution of his Article II duties--and nothing more. See Nixon, 418 U.S. at 705 (referring to "the nature of the privilege of confidentiality of Presidential communications in the exercise of Art. II powers"); id. at 708 (President and advisers "must be free to explore alternatives in the process of shaping policies and making decisions"); id. at 711 (privilege covers communications "in performance of the President's responsibilities"); In re Sealed Case, 121 F.3d 729, 744 (D.C. Cir. 1997) (privilege can be invoked when subpoenaed documents "reflect presidential decisionmaking and deliberations"); id. at 742 (privilege protects "the confidentiality of conversations

that take place in the President's performance of his official duties") (quoting Nixon v. Sirica, 487 F.2d 700, 717 (D.C. Cir. 1973) (en banc)); see also Clinton v. Jones, 117 S. Ct. 1636, 1649 n.39 (1997) ("[s]pecial caution is appropriate if the materials or testimony sought by the court relate to a President's official activities"). Like a President's immunity from particular civil damage suits, Executive privilege is "grounded in 'the nature of the function performed, not the identity of the actor who performed it.'" Jones, 117 S. Ct. at 1644 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)); see Kurland, Watergate and the Constitution 37 (1978) (supposition that Executive privilege attaches to the President, regardless of the substance of the communication, is "entirely without justification"). Executive privilege applies to Executive acts --not to private acts undertaken by the individual who is (in the words of the Supreme Court) "the current occupant of that office." Jones, 117 S. Ct. at 1639.

The subject matter of this investigation, possible crimes concerning Jones v. Clinton, plainly falls outside the President's official duties and thus outside Executive privilege. Indeed, the Supreme Court has already ruled unanimously that Jones v. Clinton can proceed to trial because it charges purely private misconduct. Because the lawsuit itself falls outside the President's official duties, there can be no serious argument

8

that possible efforts to impede the lawsuit assume a constitutional dimension.

In the particular case of Ms. Hernreich, the Executive privilege is also unavailable because her duties as gatekeeper and administrator do not fall within the definition of Presidential advisers covered by the privilege. See In re Sealed Case, 121 F.3d 729, 752 (D.C. Cir. 1997). In this regard, the privilege "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected." Id. As Ms. Hernreich has no role in formulating advice for the President on official government matters, her communications cannot fall within the scope of Executive privilege. In addition, Ms. Hernreich herself testified that she was not advising the President in the conversations at issue.

Even if Executive privilege were applicable to private conduct, under United States v. Nixon, 418 U.S. 683 (1974), Ms. Hernreich should be compelled to testify because her testimony is directly relevant to an ongoing grand jury investigation and this evidence, by its very nature, is not available with due diligence elsewhere. See In re Sealed Case, 121 F.3d at 754. Demonstrating the importance of the testimony sought and its unavailability from other sources would require a discussion of the specific questions put to her and the context

9

in which to place the information.  In the absence of a valid claim of Executive privilege, of course, this showing is not necessary.  Because of the frivolity of the assertion of Executive privilege here, the United States has not briefed this issue.  However, the United States can readily show that the testimony sought is important and unavailable to the grand jury from other sources, and will provide an exhaustive factual supplement to this motion if requested by the Court.

In conclusion, Executive privilege may apply to communications made or received in a President's official capacity or by senior advisers for the purpose of advising the President regarding official duties, but not to communications regarding the President's purely private acts.  And matters relating to Monica Lewinsky, so far as the record shows, uniformly constitute purely private acts that lie well beyond the scope of Executive privilege.  Given Ms. Hernreich's duties, in addition, her communications cannot fall within the scope of the privilege.  Accordingly, the Court should order the White House witnesses, including Ms. Hernreich, to testify regarding conversations relating to Monica Lewinsky and other private conduct of the President.

## II. MS. HERNREICH'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE SHOULD ALSO BE REJECTED.

Ms. Hernreich also asserted attorney-client privilege, as she was apparently instructed to do by her counsel, as a bar to answering questions about conversations she had with the President's personal attorneys.[8]  This was wholly unjustified.  Ms. Hernreich admitted that she had no attorney-client relationship with the President's personal attorneys.[9]  She was not seeking legal advice; indeed, she was speaking to them at their request.  It is patently absurd for her to refuse to answer questions about these conversations because of a claim that the conversations were privileged.

## III. CONCLUSION

Ms. Hernreich's assertions of Executive privilege and attorney-client privilege were improper.  She should be ordered to return to the grand jury and to respond to questions relating

---

[8] Grand Jury Tr., Feb. 25, 1998, p.43, line 11 through p.44, line 1, p.54, line 25 through p.55, line 21.

[9] Grand Jury Tr., Feb. 25, 1998, p.56, lines 5-14.  She also admitted that she herself is not a lawyer and that she has not been hired by the President's personal attorneys.  Grand Jury Tr., Feb. 25, 1998, p.44, lines 2-18.

to conversations with the President and others about Monica Lewinsky.

                Respectfully submitted,

                KENNETH W. STARR
                INDEPENDENT COUNSEL

                */s/ Robert J. Bittman*
                Robert J. Bittman
                Deputy Independent Counsel

                Stephen Bates
                Joseph M. Ditkoff
                Rodger A. Heaton
                Darrell M. Joseph
                Associate Independent Counsel

                OFFICE OF THE INDEPENDENT COUNSEL
                1001 Pennsylvania Avenue, N.W.
                Suite 490-North
                Washington, D.C.  20004
                (202) 514-8688

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, Motion to Compel Testimony, was served via fax and Federal Express or hand delivery on this the 6th day of March, 1998 to:

| | |
|---|---|
| Gerald Treanor<br>Venable<br>1201 New York Avenue, NW<br>Washington, D.C. 20005-3600 | Counsel to Nancy Hernreich |
| Honorable Charles F. C. Ruff<br>White House<br>Washington, D.C. 20500 | Counsel to the President |
| Neil Eggleston<br>Howrey and Simon<br>1299 Pennsylvania Avenue, NW<br>Washington, D.C. 20004 | Counsel to the office of the President |

David L. Dunleavy
Paralegal Specialist