UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY PROCEEDINGS

Misc. Action Nos. 98-095,
98-096 & 98-097 (NHJ)

**FILED**

MAY 2 7 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

**ORDER**

Before this Court are the motions of the Independent Counsel to unseal the executive

privilege litigation and to unseal the Court's Memorandum Opinion and Order filed May 4,

1998.  Local Rule 302 of this Court provides that orders filed in connection with a grand jury

matter "or portions thereof, may be made public by the Court . . . upon a finding that continued

secrecy is not necessary to prevent disclosure of matters occurring before the grand jury."  While

Federal Rule of Criminal Procedure 6(e) ordinarily prohibits disclosure of the particular

testimony sought from a witness or the witness's specific grounds for resisting, "when

information is sufficiently widely known . . . it has lost its character as Rule 6(e) material."  In re

Motions of Dow Jones & Company, Inc., No. 98-3033, slip op. (D.C. Cir. May 5, 1998) (quoting

In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  Two of the three witnesses in this matter have

agreed to reveal to the public their identities and some of their grounds for resisting the

subpoenas.  Upon consideration of the motion and the responses thereto, including the parties'

proposed redactions, and the decision of the United States Court of Appeals for the District of

Columbia Circuit in In re Motions of Dow Jones & Company, Inc., it is this _26th_ day of

May 1998,

ORDERED that the motion of the Independent Counsel to unseal the executive privilege

litigation be, and hereby is, granted; it is further

( N ))

26

ORDERED that the motion of the Independent Counsel to unseal the Court's

Memorandum Opinion and Order filed May 4, 1998, be, and hereby is, granted; and it is further

ORDERED that the following materials be unsealed, as redacted, to remove materials

covered by Federal Rule of Criminal Procedure 6(e): the Independent Counsel's motions to

compel in Misc. Nos. 98-95, 98-96, and 98-97; the White House's consolidated opposition to the

motions to compel; the Declaration of Charles Ruff in support of the White House's opposition;

the Independent Counsel's replies in Misc. Nos. 98-95, 98-96, and 98-97; the Independent

Counsel's motions to expedite consideration in Misc. Nos. 98-95, 98-96, and 98-97; transcripts

of hearings on February 18 and 19, 1998, and March 20, 1998; and the Court's Memorandum

Opinion and Order of May 4, 1998.

NORMA  HOLLOWAY  JOHNSON
CHIEF JUDGE

2

GRAND JURY MATERIAL REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE GRAND JURY PROCEEDINGS | ) ) ) ) | Misc. No. 98-97 (NHJ) |

## MOTION TO EXPEDITE CONSIDERATION
## OF MOTIONS TO COMPEL TESTIMONY

The United States of America, by Kenneth W. Starr, Independent Counsel, respectfully requests expedited consideration of its motions to compel testimony of White House witnesses who are asserting Executive privilege. The contours of the Executive privilege have been clearly defined to the point that this Court can resolve these issues with little difficulty. Considering the desire of all parties for a speedy resolution of this investigation, expedited consideration of the motions is warranted and in the best interests of justice. The President will not be unfairly prejudiced by expedited consideration, as he has been contemplating these issues for over a month and clear and binding precedent on Executive privilege now exists.

Because of the vast importance of Executive privilege issues in the context of a criminal investigation, this Court historically has resolved such claims with considerable dispatch. In In re Grand Jury Subpoena Duces Tecum Issued to Richard M. Nixon, 360 F. Supp. 1 (D.D.C.), modified sub nom. Nixon v.

1

GRAND JURY MATERIAL REDACTED

<u>Sirica</u>, 487 F.2d 700 (D.C. Cir. 1973) (en banc), this Court addressed Watergate Special Prosecutor Archibald Cox's subpoena request for tapes.  Despite the dearth of relevant precedent and President Nixon's additional claim that this Court lacked jurisdiction, this Court held a hearing 27 days after Special Prosecutor Cox's request for a show cause order.  This Court issued its opinion 7 days later and allowed only 5 days to appeal.

In <u>United States v. Mitchell</u>, 377 F. Supp. 1326 (D.D.C.), <u>aff'd sub nom.</u> <u>United States v. Nixon</u>, 418 U.S. 683 (1974), this Court considered President Richard Nixon's invocation of Executive privilege against Watergate Special Prosecutor Leon Jaworski.  With the law somewhat more settled by the District of Columbia Circuit's opinion in <u>Sirica</u>, this Court held a hearing 11 days after the President's motion to quash.  This Court issued its opinion 7 days later and granted the parties only 4 days to appeal.

The United States respectfully submits that, now that this Court has the additional guidance of <u>Nixon</u> and <u>In re Sealed Case</u>, 121 F.3d 729 (D.C. Cir. 1997), such expedition is even more warranted.  Pursuant to D.D.C. R. 108, briefing will be completed no later than Tuesday, March 24, 1998.  We request a hearing as soon as possible thereafter, preferably the week of the March 23,

2

GRAND JURY MATERIAL REDACTED

and a decision as quickly as possible thereafter.  In that
regard, the United States respectfully submits that it might be
prudent for this Court to issue an order with an opinion to
follow afterwards.  In addition, should non-Executive privilege
issues delay this Court in rendering a decision on any particular
subpoena, the United States respectfully suggests that an
immediate order resolving the remaining subpoenas would be in the
interests of justice.

The President will not be prejudiced by such an expedited
schedule.  [REDACTED].

Press reports indicate that the President and his attorneys
have been discussing the possibility of asserting Executive
privilege to bar Deputy Counsel Bruce Lindsey's testimony since
as early as February 3.  See Susan Schmidt & Peter Baker, Logs
Show About 3 Dozen Lewinsky Visits; Clinton Secretary Cleared
Most Entries Into White House After Spring 1996, Wash. Post, Feb.
4, 1998, at A1.[1]  Media reports also state that White House
lawyers already have prepared legal briefs on the Executive

_____

[1] See also Ruth Marcus, Clinton's 'Captain of the Defense';
Confidant, Counselor Lindsey Follows a 'Less Is More' Strategy in
Fighting White House Firestorms, Wash. Post, Feb. 5, 1998, at A12
(reporting that "the White House weighs whether to claim that
some of Lindsey's conversations with Clinton are shielded by
executive privilege"); John M. Broder, Starr Outlines Conditions
For a Grant of Immunity, N.Y. Times, Feb. 6, 1998, at A21
(reporting that President Clinton personally stated that he had
not yet decided whether to invoke Executive Privilege).

GRAND JURY MATERIAL REDACTED

privilege issue. <u>See</u> John M. Broder & Don Van Natta Jr.,

<u>Executive Privilege Invoked In Clinton Aides' Testimony</u>, N.Y.

Times, Feb. 25, 1998, at A1.  As the President has been

contemplating the Executive privilege issues for over a month,

scheduling an expeditious hearing will not unfairly prejudice his

interests, especially considering the existence of clear and

binding precedent on Executive privilege.

The United States, therefore, respectfully requests

expedited consideration of its motion to compel.  Specifically,

we request a hearing the week of March 23, 1998.  The United

States further respectfully requests that this Court decide this

motion with the utmost dispatch.

Respectfully submitted,

KENNETH W. STARR
INDEPENDENT COUNSEL


_____
Rodger A. Heaton
Associate Independent Counsel

Joseph M. Ditkoff
Darrell M. Joseph
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C.  20004
(202) 514-8688

4

GRAND JURY MATERIAL REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE GRAND JURY PROCEEDINGS | ) ) ) | Misc. No. 98-97 (NHJ) |
| _____ | ) | ███████████ |

### MOTION TO COMPEL [REDACTED] TO TESTIFY

The United States of America, by Kenneth W. Starr,
Independent Counsel, respectfully moves this Court to compel
[REDACTED] to testify before the grand jury regarding the matters
for which [the witness] has previously asserted Executive and
attorney-client privilege.  In support of this motion, the United
States submits the reasons and authorities contained in its Brief
in Support of Motion to Compel [REDACTED] to Testify.

Respectfully submitted,

KENNETH W. STARR
INDEPENDENT COUNSEL

_____

Robert J. Bittman
Deputy Independent Counsel

Stephen Bates
Joseph M. Ditkoff
Rodger A. Heaton
Darrell M. Joseph
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C.  20004
(202) 514-8688

GRAND JURY MATERIAL REDACTED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | Misc. No. 98-97 (NHJ) |

## BRIEF IN SUPPORT OF MOTION TO COMPEL [REDACTED] TO TESTIFY

The United States, by Kenneth W. Starr, Independent Counsel, respectfully submits this Brief in Support of the Motion to Compel [REDACTED] to testify before the grand jury. The grand jury here is investigating "to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether Monica Lewinsky or others suborned perjury, obstructed justice, intimidated witnesses or otherwise violated federal law other than a Class B or Class C misdemeanor or infraction in dealing with witnesses, potential witnesses, attorneys, or others concerning the civil case Jones v. Clinton." In furtherance of that mandate, [REDACTED] was asked to relay the substance of [the witness's] conversations with several other people relating to Monica Lewinsky at a time when Ms. Lewinsky was no longer employed by the United States. [REDACTED] stated that [the witness] was not willing to answer any questions concerning conversations about Monica Lewinsky that occurred among White House staff.[FOOTNOTE REDACTED]

2

GRAND JURY MATERIAL REDACTED

In refusing to disclose the substance of conversations concerning Monica Lewinsky, [REDACTED] invoked Executive privilege and attorney-client privilege.  As a matter of law, neither of the asserted privileges applies.  Executive privilege is flatly inapplicable to communications about the President's private conduct; and attorney-client privilege is unavailable to a person who is not seeking legal advice.  Accordingly, we respectfully submit that the Court should compel [REDACTED] to testify.[1]

## I.  [REDACTED]'S ASSERTION OF EXECUTIVE PRIVILEGE SHOULD BE REJECTED.

The White House asserted Executive privilege where it clearly does not apply.  On [REDACTED], [REDACTED] asserted Executive privilege in refusing to answer several questions before the grand jury that sought the substance of conversations regarding the President's purely private conduct--conduct having no relation to his Article II duties.  Specifically, [REDACTED] asserted Executive privilege in refusing to reveal the substance of conversations involving Monica Lewinsky.  [REDACTED] asserted the privilege concerning conversations with the President

_____

[1] The present filing is necessarily broad and general because neither [REDACTED] nor the White House has yet offered any rationale for invocation of the privileges here.  The burden, of course, rests on the party asserting a testimonial privilege. Bartholdi Cable Co. v. FCC, 114 F.3d 274, 280 (D.C. Cir. 1997).

3

GRAND JURY MATERIAL REDACTED

[FOOTNOTE REDACTED] and with lawyers in the White House Counsel's office. [FOOTNOTE REDACTED]

Several independent reasons dictate that this Court should not allow White House witnesses, including [REDACTED], to deprive the grand jury of relevant testimony based on an assertion of Executive privilege. First and foremost, the privilege, by definition, does not apply to this subject matter. The testimony sought would not reveal the kinds of communications that are protected by the privilege--for example, national security or diplomatic secrets--nor would it reveal confidential deliberative communications about official governmental matters. This Court should not allow a witness to assert a governmental privilege to deny the grand jury testimony about private conduct. Second, the privilege does not apply to [REDACTED]'s conversations at issue because--by [THE WITNESS'S] own account--[THE WITNESS] was not advising President Clinton or others at the White House about official governmental matters when [THE WITNESS] spoke to them about Monica Lewinsky. [FOOTNOTE REDACTED] Third, the privilege can be invoked only by the President and his immediate advisers, a category that does not include [REDACTED]. [THE WITNESS] testified that [THE WITNESS'S] role in the White House is [REDACTED]. Finally, even assuming Executive privilege applies, it is a qualified privilege which the United States can readily

4

GRAND JURY MATERIAL REDACTED

overcome.

Executive privilege may in some circumstances provide varying protection for Executive branch communications, including those reflecting state secrets, Presidential communications, and the deliberative processes of Executive branch officials. See M. Larkin, Federal Testimonial Privileges § 5.01, at 5-2 (1996). The Presidential communications prong of the Executive privilege is implicit in Article II of the Constitution, and the deliberative process prong has its roots in the common law.[2]

However, privileges are an "exception[] to the demand for every man's evidence" and they should be neither "lightly created nor expansively construed, for they are in derogation of the search for truth." Nixon, 418 U.S. at 710.

The grand jury has an important function assigned by the Constitution. The grand jury's role is to indict persons who there is probable cause to believe committed crimes, and to protect persons from unwarranted prosecution where probable cause

---

[2] United States v. Nixon holds that the Executive privilege for Presidential communications is qualified, not absolute, and turns on the nature of the documents and the nature of the proceeding. For documents reflecting state secrets, the privilege is virtually absolute in all proceedings--whether congressional, civil, or criminal. For non-state-secret documents, the result turns on the nature of the proceeding. That is, there must be a balancing of needs. 418 U.S. 683, 703-13 (1974). Executive privilege, however "cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." Id. at 713.

5

GRAND JURY MATERIAL REDACTED

does not exist. United States v. Calandra, 414 U.S. 338, 343

(1974). To accomplish that function, the grand jury must have

access to all relevant evidence: "[T]he longstanding principle

that 'the public . . . has a right to every man's evidence,'

except for those persons protected by a constitutional, common-

law, or statutory privilege, is particularly applicable to grand

jury proceedings." Branzburg v. Hayes, 408 U.S. 665, 688 (1972)

(citations omitted). The grand jury is an arm of the court and

its inquiries are judicial proceedings. Levine v. United States,

362 U.S. 610, 617 (1960). The grand jury's "investigative powers

are necessarily broad. 'It is a grand inquest . . . the scope of

whose inquiries is not to be limited narrowly by questions of

propriety or forecasts of the probable result of the

investigation.'" Branzburg, 408 U.S. at 688 (quoting Blair v.

United States, 250 U.S. 273, 282 (1919)). A grand jury

investigation is "not fully carried out until every available

clue has been run down and all witnesses examined in every proper

way to find if a crime has been committed." Id. at 701 (citation

omitted). For that reason, the Supreme Court has said, the grand

jury is entitled to a considerably broader range of evidence than

either the government or a criminal defendant would be entitled

to introduce at trial. United States v. R. Enters., Inc., 498

U.S. 292, 298 (1991). "Nowhere is the public's claim to each

6

GRAND JURY MATERIAL REDACTED

person's evidence stronger than in the context of a valid grand jury subpoena."  In re Sealed Case, 676 F.2d 793, 806 (D.C. Cir. 1982) (footnote omitted).

The limited case law on the subject of Executive privilege makes one principle crystal clear:  the privilege, whether applied to a conversation with the President or to fact gathering in preparation for such a conversation, is intended to promote candid communications by and with a President concerning the execution of his Article II duties--and nothing more.  See Nixon, 418 U.S. at 705 (referring to "the nature of the privilege of confidentiality of Presidential communications in the exercise of Art. II powers"); id. at 708 (President and advisers "must be free to explore alternatives in the process of shaping policies and making decisions"); id. at 711 (privilege covers communications "in performance of the President's responsibilities"); In re Sealed Case, 121 F.3d 729, 744 (D.C. Cir. 1997) (privilege can be invoked when subpoenaed documents "reflect presidential decisionmaking and deliberations"); id. at 742 (privilege protects "the confidentiality of conversations that take place in the President's performance of his official duties") (quoting Nixon v. Sirica, 487 F.2d 700, 717 (D.C. Cir. 1973) (en banc)); see also Clinton v. Jones, 117 S. Ct. 1636, 1649 n.39 (1997) ("[s]pecial caution is appropriate if the

7

GRAND JURY MATERIAL REDACTED

materials or testimony sought by the court relate to a
President's official activities").  Like a President's immunity
from particular civil damage suits, Executive privilege is
"grounded in 'the nature of the function performed, not the
identity of the actor who performed it.'"  Jones, 117 S. Ct. at
1644 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)); see
Kurland, Watergate and the Constitution 37 (1978) (supposition
that Executive privilege attaches to the President, regardless of
the substance of the communication, is "entirely without
justification").  Executive privilege applies to Executive acts
--not to private acts undertaken by the individual who is (in the
words of the Supreme Court) "the current occupant of that
office."  Jones, 117 S. Ct. at 1639.

The subject matter of this investigation, possible crimes
concerning Jones v. Clinton, plainly falls outside the
President's official duties and thus outside Executive privilege.
Indeed, the Supreme Court has already ruled unanimously that
Jones v. Clinton can proceed to trial because it charges purely
private misconduct.  Because the lawsuit itself falls outside the
President's official duties, there can be no serious argument
that possible efforts to impede the lawsuit assume a
constitutional dimension.

In the particular case of [REDACTED], the Executive

8

GRAND JURY MATERIAL REDACTED

privilege is also unavailable because [THE WITNESS'S] duties as

[REDACTED] do not fall within the definition of Presidential

advisers covered by the privilege.  See In re Sealed Case, 121

F.3d 729, 752 (D.C. Cir. 1997).  In this regard, the privilege

"should be construed as narrowly as is consistent with ensuring

that the confidentiality of the President's decisionmaking

process is adequately protected."  Id.  As [REDACTED] has no role

in formulating advice for the President on official government

matters, [THE WITNESS'S] communications cannot fall within the

scope of Executive privilege.  In addition, [REDACTED] testified

that [THE WITNESS] was not advising the President in the

conversations at issue.

Even if Executive privilege were applicable to private

conduct, under United States v. Nixon, 418 U.S. 683 (1974),

[REDACTED] should be compelled to testify because [THE WITNESS'S]

testimony is directly relevant to an ongoing grand jury

investigation and this evidence, by its very nature, is not

available with due diligence elsewhere.  See In re Sealed Case,

121 F.3d at 754.  Demonstrating the importance of the testimony

sought and its unavailability from other sources would require a

discussion of the specific questions put to [THE WITNESS] and the

context in which to place the information.  In the absence of a

valid claim of Executive privilege, of course, this showing is

9

GRAND JURY MATERIAL REDACTED

not necessary. Because of the frivolity of the assertion of Executive privilege here, the United States has not briefed this issue. However, the United States can readily show that the testimony sought is important and unavailable to the grand jury from other sources, and will provide an exhaustive factual supplement to this motion if requested by the Court.

In conclusion, Executive privilege may apply to communications made or received in a President's official capacity or by senior advisers for the purpose of advising the President regarding official duties, but not to communications regarding the President's purely private acts. And matters relating to Monica Lewinsky, so far as the record shows, uniformly constitute purely private acts that lie well beyond the scope of Executive privilege. Given [REDACTED]'s duties, in addition, [THE WITNESS'S] communications cannot fall within the scope of the privilege. Accordingly, the Court should order the White House witnesses, including [REDACTED], to testify regarding conversations relating to Monica Lewinsky and other private conduct of the President.

II. **[REDACTED]'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE SHOULD ALSO BE REJECTED.**

[REDACTED] also asserted attorney-client privilege, as [THE WITNESS] was apparently instructed to do by [THE WITNESS'S] counsel, as a bar to answering questions about conversations [THE

10

GRAND JURY MATERIAL REDACTED

WITNESS] had with the President's personal attorneys.[FOOTNOTE

REDACTED]   This was wholly unjustified.   [REDACTED] admitted that

[THE WITNESS] had no attorney-client relationship with the

President's personal attorneys.[FOOTNOTE REDACTED]   [THE WITNESS]

was not seeking legal advice; indeed, [THE WITNESS] was speaking

to them at their request.   It is patently absurd for [THE

WITNESS] to refuse to answer questions about these conversations

because of a claim that the conversations were privileged.

III. CONCLUSION

[REDACTED]'s assertions of Executive privilege and attorney-

client privilege were improper.   [THE WITNESS] should be ordered

[REDACTED] to the grand jury and to respond to questions relating

to conversations with the President and others about Monica

Lewinsky.

Respectfully submitted,

KENNETH W. STARR
INDEPENDENT COUNSEL


_____
Robert J. Bittman
Deputy Independent Counsel

Stephen Bates
Joseph M. Ditkoff
Rodger A. Heaton
Darrell M. Joseph
Associate Independent Counsel


11

GRAND JURY MATERIAL REDACTED

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C.   20004
(202) 514-8688

12

GRAND JURY MATERIAL REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

)
IN RE GRAND JURY PROCEEDINGS   )    **Misc. No. 98-97 (NHJ)**
)
_____)

## REPLY MEMORANDUM OF THE UNITED STATES OF AMERICA
## IN SUPPORT OF MOTION TO COMPEL [REDACTED] TO TESTIFY

The United States of America, by Kenneth W. Starr,
Independent Counsel, respectfully submits this reply memorandum
in support of its motion to compel [REDACTED] to testify.
Neither the White House nor [REDACTED] has attempted to defend
[THE WITNESS'S] prior assertions of privilege before the grand
jury sitting in this District. [THE WITNESS'S] failure to file a
responsive opposition memorandum permits the Court to "treat the
motion as conceded." D.D.C. R. 108(b). The privileges claimed
are, in any event, without merit. The United States respectfully
requests that the Court compel [REDACTED] to testify before the
grand jury.

## I.    FACTUAL OVERVIEW

On [REDACTED], [REDACTED] appeared before the grand jury.
On advice of counsel, [THE WITNESS] invoked Executive privilege
and refused to answer questions about any conversations with
President Clinton or White House staff regarding Monica Lewinsky
occurring after the allegations became public.[FOOTNOTE REDACTED]

1

GRAND JURY MATERIAL REDACTED

[THE WITNNES] also refused to answer questions about
conversations with President Clinton regarding Kathleen
Willey.[FOOTNOTE REDACTED]  Generally, [REDACTED] was willing to
provide details about the time, place, and participants of
conversations, but would not answer any questions about the
content of the conversations.  [THE WITNESS] expressly invoked
Executive privilege in refusing to answer questions about even
the general subject matter of conversations with Bruce R. Lindsey
after July 1997.[FOOTNOTE REDACTED]  [THE WITNESS] also made
several claims of attorney-client privilege.[FOOTNOTE REDACTED]

On March 4, 1998, the White House proposed allowing non-
attorneys, such as [REDACTED], to testify regarding "factual
information," but indicated it would continue to invoke Executive
privilege "with respect to strategic deliberations and
communications."  In addition, the White House would continue to
assert blanket privileges for attorneys.  The United States
rejected the White House's proposal only to the extent the White
House continued to assert baseless privileges.  The White House
did not indicate that its concessions were unilateral.

With all respect, the White House has mischaracterized the
parties' pre-litigation Executive privilege negotiations by
claiming that the Office of Independent Counsel ("OIC") has
needlessly provoked an avoidable constitutional confrontation.

2

GRAND JURY MATERIAL REDACTED

See Ruff Declaration ¶¶ 45-51 and Exhibits 1-7.  The facts show otherwise:  As reflected in the exhibits to the Ruff Declaration, the OIC attempted to negotiate in good faith with the White House.  It was only after a delay of more than four weeks, when it became clear that the White House would not permit witnesses to provide vital information, thereby unduly delaying the work of the grand jury, that the OIC filed its motions to compel.

## II.   EXECUTIVE PRIVILEGE

The White House has withdrawn its assertions of Executive privilege over "factual matters" and has stated that it does not believe [REDACTED] will assert that privilege as to any "factual matters."  Mem. of White House in Opp. at 1, 30 n.19 [hereinafter Opp.].  It is not clear what the White House means.  For example, during [THE WITNESS'S] [REDACTED] appearance, [REDACTED] invoked the privilege and refused to answer a question as to whether the subject of Monica Lewinsky or Kathleen Willey came up in [THE WITNESS'S] conversations with Mr. Lindsey.[FOOTNOTE REDACTED] [THE WITNESS] also claimed privilege with regard to the contents of such conversations.

The White House has recently attempted to draw a distinction between "factual information regarding the Lewinsky investigation" and "strategic communications."  See Ruff Declaration ¶ 48 & Exhibit 6.  This is word play.  At minimum,

3

GRAND JURY MATERIAL REDACTED

this standard leaves open the time-consuming possibility that the White House will continue to invoke the privilege with regard to questions about the content of [REDACTED]'s Monica Lewinsky or Kathleen Willey-related discussions with persons such as Mr. Lindsey, under the theory that such questions do not call for "factual" matter.

Consequently, the United States asks this Court to compel [REDACTED]'s testimony.  By [REDACTED]'s own testimony, [REDACTED].[FOOTNOTE REDACTED]  <u>[THE WITNESS] has no duty to advise President Clinton and was not advising him or other White House staff members about official government matters in [THE WITNESS'S] conversations about Monica Lewinsky.</u>[FOOTNOTE REDACTED]  [THE WITNESS] does not fall within the definition of Presidential advisors covered by the privilege.  <u>See</u> <u>In re Sealed Case</u>, 121 F.3d 729, 752 (D.C. Cir. 1997) (the privilege "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected").  None of [THE WITNESS'S] conversations, therefore, whether factual or strategic, is protected by Executive privilege.

Whether or not Presidential communications are "presumptively privileged," Opp. at 24, privilege does not apply to the communications for which [REDACTED] invoked it, and

4

GRAND JURY MATERIAL REDACTED

neither the White House nor [REDACTED] have attempted to make any showing to the contrary.  The upshot is this:  [THE WITNESS] may not lawfully claim the privilege.

## III.   ATTORNEY-CLIENT PRIVILEGE

As to [REDACTED], the White House has withdrawn its assertion of attorney-client privilege "to factual questions." Moreover, the White House has represented that it does not believe that [REDACTED] would assert privileges to questions about "factual matters."  Opp. at 1, 20.  There is no basis for [REDACTED] to claim attorney-client privilege to refuse to answer any of the questions posed to [THE WITNESS].  The reason is straightforward: [REDACTED] is not a lawyer, has no attorney-client relationship with President Clinton's private attorneys, and has not been hired by those attorneys.[FOOTNOTE REDACTED]

The White House no longer is claiming that [REDACTED] can rely on the attorney-client privilege; at the same time, the White House will acknowledge only that [REDACTED] will answer questions about "factual matters," apparently leaving open [THE WITNESS'S] ability to refuse to answer other, unspecified types of questions.  In the absence of even an argument why [REDACTED]'s testimony would fall within the privilege, any effort to restrict the witness's testimony is inappropriate. Given that [THE WITNESS] has now abandoned [THE WITNESS'S]

GRAND JURY MATERIAL REDACTED

privilege arguments, [REDACTED] is required to testify to the same extent as any other grand jury witness.

The burden of showing the applicability of the attorney-client privilege rests on the party invoking its protections. See FTC v. TRW, Inc., 628 F.2d 207, 213 (D.C. Cir. 1980). As [REDACTED] has not made any showing, [THE WITNESS] obviously has failed to carry this burden.

## IV.    CONCLUSION

Neither [REDACTED] nor the White House has attempted to defend [THE WITNESS'S] invocations of Executive privilege and attorney-client privilege in refusing to answer the grand jury's questions. As a non-advisor, [THE WITNESS] is not covered by Executive privilege.   [THE WITNESS] cannot make any valid showing of the existence of attorney-client privilege. Consequently, the United States respectfully requests that the Court compel [REDACTED] to testify, regardless of whether the White House considers the questions factual or strategic.

Respectfully submitted,

_____
KENNETH W. STARR
INDEPENDENT COUNSEL

Robert J. Bittman
Deputy Independent Counsel

6

GRAND JURY MATERIAL REDACTED

Stephen Bates
Joseph M. Ditkoff
Darrell M. Joseph
Rodger A. Heaton
Andrew D. Leipold
Craig S. Lerner
Associate Independent Counsel

OFFICE OF THE INDEPENDENT COUNSEL
1001 Pennsylvania Avenue, N.W.
Suite 490-North
Washington, D.C.   20004
(202) 514-8688